### UNITED STATES DISTRICT COURT FOR THE
### MIDDLE DISTRICT OF PENNSYLVANIA

SEAN MILLER,               :
        Plaintiff        :     CIVIL NO. 4:11-cv-811
                    :
      v.              :     (Judge Nealon)
                    :
K. TROMETTER, et al.,     :
        Defendants    :

**FILED**
**SCRANTON**

**NOV 2 7 2012**

Per_____ _M. b. k._
DEPUTY CLERK

### MEMORANDUM

On April 27, 2011, Plaintiff, Sean Miller, who was previously confined at the State Correctional Institution Frackville, Pennsylvania ("SCI-Frackville"), filed the above captioned civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are the following employees at SCI-Frackville: Correctional Officer Trometter, Hearing Examiner Luquis, Superintendent Collins, and Grievance Coordinator Damiter. (Id.). The complaint also names Program Review Committee ("PRC") members Deputy Superintendent of Centralized Services Kovalchik, Deputy Superintendent of Facility Management Derfler, and Centralized Correctional Program Manager Kephart ("PRC Defendants"). (Id.). Plaintiff alleges racial discrimination, defamation, failure to protect, retaliation, denial of basic human needs, and due process violations. (Id.). On June 16, 2011, Defendants filed a motion to dismiss, which became moot when Plaintiff filed an amended complaint on August 18, 2011. (Docs. 6, 11, 15). On September 1, 2011, Defendants filed a motion to dismiss less than all the claims in the amended complaint. (Doc. 12). Plaintiff filed a brief in opposition on September 22, 2011. For the reasons set forth herein, the motion will be granted in part and denied in part.

### Factual Allegations

The amended complaint, (Doc. 11), makes the following factual allegations:

On March 22, 2010, Defendant Trometter denied the request of Plaintiff, an African American, and of a majority group of other African American inmates to turn the day room television to Black Entertainment Television ("B.E.T."). Defendant Trometter responded, "there will be no black shows, including B.E.T. shown on the TV while I'm working." Plaintiff alleges that this discriminatory conduct violates prison policy that inmates are entitled to two (2) hours of recreational activities daily and is contrary to the prison's practice of showing television programs requested by a majority of the inmates. Plaintiff filed a grievance against Defendant Trometter regarding this incident.

On April 12, 2010, Plaintiff's cellmate informed him that Defendant Trometter said Plaintiff was a "rat" because Plaintiff snitched on Defendant Trometter by filing a grievance. Defendant Trometter told the cellmate that it would only be a matter of time before she got even with Plaintiff.

On April 26, 2010, another inmate advised Plaintiff that Defendant Trometter informed him that Plaintiff was a "snitch" by filing the grievance and that Defendant Trometter's superiors are now watching her closely. Also on April 26, 2010, Plaintiff's cellmate advised Plaintiff that he witnessed Defendant Trometter tell many other inmates that Plaintiff was a snitch and that someone needed to get him off the block. After that date, several inmates disassociated themselves with Plaintiff based on rumors he was a snitch.

On April 28, 2010, Plaintiff spoke with Defendants Collins and Kovalchik about the rumors spread by Defendant Trometter and requested a transfer to another housing block. Defendant Kovalchik advised Plaintiff to send a written request and he would look into the situation. The next day, Plaintiff wrote Defendant Kovalchik and sent a copy to Defendant

2

Collins. Plaintiff received no response and no action was taken.

On May 8, 2010, Plaintiff was attacked by two (2) inmates on his block, one armed with a steel shank. Plaintiff suffered scratches, bruises, headaches, and required stitches. After release from the medical department, Plaintiff was placed in the Restrictive Housing Unit ("RHU"). On May 9, 2010, Defendant Trometter told an inmate that she was glad they got the snitch.

On July 28, 2010, Plaintiff appeared at a Program Review Committee hearing. He expressed his concerns to the PRC Defendants about his attack, Defendants' failure to protect, and the lack of discipline to Defendant Trometter for spreading rumors that he was a snitch. Plaintiff requested a transfer; but, the PRC Defendants returned him to the same housing block.

On August 6, 2010, Defendant Trometter denied Plaintiff's request for a shower. On August 8, 2010, Defendant Trometter refused to give Plaintiff a pen to sign for his mail, although she had provided a pen to other inmates.

On August 25, 2010, Defendant Trometter told Plaintiff's cellmate, "I'm tired of being around him [Plaintiff] after he filed grievances on me and if you don't get him out of there [the cell], I will." On August 27, 2010, Defendant Trometter issued a false misconduct to Plaintiff for sexual harassment, alleging that Plaintiff created and left a lewd drawing on the office desk. The next day, Plaintiff wrote to Defendant Damiter about the falsified misconduct charge and of Defendant Trometter's ongoing acts of retaliation. Defendant Damiter advised Plaintiff to file an appeal, which he did. When Defendant Damiter informed Plaintiff that he did not receive the written complaint, Plaintiff refiled the grievance on September 2, 2010.

On August 30, 2010, Plaintiff's misconduct hearing was held by Defendant Luquis. Plaintiff submitted his version of the events and witnesses Wickersham and Captain Dusel.

3

Plaintiff also stated that he intended to present documentary evidence, in the nature of handwriting exemplars and an affidavit from his cellmate, establishing that he did not create the lewd drawing.  Defendant Luquis lectured Plaintiff about filing grievances against staff because it remains on their record and refused to view Plaintiff's evidence, stating "I don't have time for that."  Defendant Luquis found Plaintiff guilty of the false charge and sanctioned him to a total of ninety (90) days placement in the RHU.  Plaintiff alleges that Defendant Luquis is bias and routinely denies relevant witnesses and evidence.

Between September 13 and 16, 2010, and on October 5 and 6, 2010, staff members Wickersham and Shaeffer denied Plaintiff breakfast and lunch.  Throughout September and October, 2010, they also denied Plaintiff showers on twenty-eight (28) occasions and denied yard exercise thirty-four (34) times.  Wickersham and Shaeffer falsified the meal, yard, and shower list to cover-up their misconduct.  During this time, Plaintiff was subjected to degrading, irregular, and excessive body cavity strip searches involving twenty-two (22)[1] unnecessary steps contrary to prison policy.  The extra steps were unsanitary because Plaintiff was forced to place his fingers in his mouth, for a visual inspection thereof, after having been in the prison yard for exercise and having touched, inter alia, his penis and buttocks as part of the search.  Plaintiff alleges that he developed soar throats and became ill as a result.

On September 13 and 15, 2010, Plaintiff filed grievances regarding his mistreatment.  On September 27, 2010, he spoke with Defendant Damiter regarding his complaints of retaliation by Defendant Trometter, of deprivation of food, showers, and laundry, and of excessive body cavity

---

[1]The amended complaint describes eleven (11) steps taken each time Plaintiff left, and then returned, to his cell.

searches.  Defendant Damiter told Plaintiff that he filed too many grievances, was going home soon, and refused to address his complaints.  Plaintiff informed Defendant Damiter that he still had thirty (30) days left.  Defendant Damiter allegedly demonstrated a pattern of retaliation and refused to consider complaints of inmates who file multiple grievances and are close to going home.

On September 17, 2010, the PRC Defendants refused to correct the constitutional violations when addressing Plaintiff's misconduct appeal.  On September 28, 2010, Defendant Collins also failed to correct the violations when he considered Plaintiff's misconduct appeal.

Plaintiff alleges racial discrimination, defamation, failure to protect, and retaliation against Defendant Trometter.  He claims Defendants Collins and Kovalchik breached their duty to protect Plaintiff after being informed that Plaintiff had been labeled a snitch and was subsequently assaulted based on such rumors.  Plaintiff alleges that Defendants Luquis and Damiter retaliated against him for filing grievances.  The amended complaint pleads an Eighth Amendment claim for denial of basic human needs against Wickersham and Shaeffer for denying him food, showers, and exercise.  Plaintiff alleges that he was denied due process by Defendant Luquis at his misconduct hearing and that Defendants Collins, Kovalcik, Derfler, and Kephart failed to correct the violations.  The amended complaint alleges that the body cavity strip searches were conducted in an unconstitutional manner.  Finally, Plaintiff claims that all the conditions of confinement constituted a significant hardship and that Defendant acted with reckless indifference.

**Standard of Review**

In rendering a decision on a motion to dismiss, a court should not inquire "whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. Innis v. Wilson, 2009 U.S. App. LEXIS 12424, *4-5 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "First, the factual and legal elements of a claim should be separated." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The court must then determine whether the complaint states a plausible claim for relief, which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557-58 (2007)); see also 28 U.S.C. § 1915A(b) (directing the court to identify cognizable claims and to dismiss any portion of the complaint that fails to state a claim). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" Id.; FED. R. CIV. P. 8(a)(2).

**Discussion**

In the motion to dismiss, Defendants argue that Plaintiff's racial discrimination claim against Defendant Trometter should be dismissed because inmates have no constitutional right to watch television. Next, Defendants contend that the state law tort claim of defamation against Defendant Trometter should be dismissed because it is barred by sovereign immunity.

Defendants assert that Plaintiff's Eighth Amendment claim based upon a denial of basic human needs should be dismissed because Wickersham and Shaeffer are not named as Defendants. Also, the motion to dismiss states that because the hearing examiner determined there was a legitimate penological basis for Plaintiff's misconduct charge, the retaliation claim fails. Defendants argue that because there is no First Amendment right to access a prison grievance process, Plaintiff's claim against Defendant Damiter, for retaliation, should also be dismissed. Defendants then contend that Plaintiff's due process claim arising from the misconduct hearing should be dismissed because he received the procedural protections required by Wolff.[2] See (Docs. 12-13).  Further, they argue that the due process claim against Defendants Kovalchik, Derfler, Kephart, and Collins should be dismissed because Plaintiff failed to establish personal involvement.  Finally, Defendants assert that Plaintiff's request for monetary damages against them in their official capacities should be dismissed for failure to state a claim.  The motion to dismiss does not mention count three (3), duty to protect.

On September 22, 2012, Plaintiff filed a brief in opposition to the motion to dismiss.  See (Doc. 14).  The brief, in some fashion, addresses several of Defendants' arguments, as will be discussed with specificity below.  However, Plaintiff makes no reference to Defendants' claim that count five (5), denial of basic human needs, should be dismissed because Wickersham and Shaeffer are not named as Defendants.  The opposition brief also fails to address Defendants' contention that Plaintiff's racial discrimination claim, count one (1), against Defendant Trometter should be dismissed because inmates have no constitutional right to watch television.

---

[2]Wolff v. McDonnell, 418 U.S. 539, 572 (1974) (explaining the due process procedures required in prison disciplinary proceedings).

A.    **Racial Discrimination- Count One (1)**

Defendants argue that Plaintiff's racial discrimination claim against Defendant Trometter for denying his request, and that of a majority of other African American inmates, to watch B.E.T. should be dismissed because inmates have no constitutional right to watch television. (Doc. 13), citing Scheanette v. Dretke, 199 Fed. Appx. 336 (5th Cir. 2006) (dismissing the prisoner's claim that death row inmates were denied televisions); Murphy v. Walker, 51 F.3d 714, 718, n.8 (7th Cir. 1995) (finding no constitutional violation in the prisoner's claim that he was denied television).  The opposition brief fails to address this matter.  See (Doc. 14). Nevertheless, this Court finds Defendants' argument unpersuasive.

The cases to which Defendants refer are distinguishable from the instant action because neither inmate in the cited cases alleged that he was denied television privileges on the basis of race or any other protected class.  See Scheanette, 199 Fed. Appx. 336; Murphy, 51 F.3d 714. Although this Court agrees that inmates do not have a constitutional right to watch television, if Plaintiff was denied television privileges, which other inmates shared, for discriminatory reasons, then he has an equal protection claim.  See Hines v. Clymer, 1988 U.S. Dist. LEXIS 14445, *2 (E.D. Pa. 1988) (A "prisoner has been denied equal protection if he has been denied a privilege which is enjoyed by other inmates, but which the plaintiff has not received because of discrimination."); United States ex rel. Wakeley v. Pennsylvania, 247 F. Supp. 7, 14 (E.D. Pa. 1965) (stating, "without regard to whether the state must actually afford [an inmate] privileges, if it does so generally but discriminates against plaintiff he has been denied the equal protection of the law as guaranteed by the Fourteenth Amendment").  The Seventh Circuit Court of Appeals, which issued the Murphy opinion Defendants rely upon, also recognizes this distinction.  See

8

DeWalt v. Carter, 224 F.3d 607, 613 (7th Cir. 2000) (holding that if prison officials allocate television privileges on a "discriminatory basis, their actions would be unconstitutional even though such privileges do not constitute liberty or property interests").

The amended complaint claims that Defendant Trometter refused to allow Plaintiff to watch B.E.T. because of race discrimination. (Doc. 11) (alleging Defendant Trometter stated, "there will be no black shows... while I'm working"). At this stage of the proceedings, Plaintiff's allegations are sufficient to support an equal protection claim under the Fourteenth Amendment. Cf. Lyons v. Wetzel, 2012 U.S. Dist. LEXIS 129891, *12-22 (M.D. Pa. 2012) (Carlson, M.J.) (dismissing without prejudice the prisoner's equal protection claim that he was denied television privileges while in the Restrictive Housing Unit (RHU) because, inter alia, he was not part of a protected class), adopted by, 2012 U.S. Dist. LEXIS 129888 (M.D. Pa. 2012) (Conner, J.); Riley v. Snyder, 72 F. Supp. 2d 456, 460 (D. Del. 1999) (denying a death row inmate's equal protection claim that he was denied the same television privileges as inmates in general population because, in part, he was not a member of a suspect class). Accordingly, Defendants motion to dismiss count one (1) will be denied.

### B.    Defamation- Count Two (2)

The motion to dismiss asserts that the state law tort claim of defamation against Defendant Trometter should be dismissed because it is barred by sovereign immunity. (Doc. 13).

" Pursuant to section 11 of Article I of the Constitution of Pennsylvania, ... the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa.C.S. § 2310.  "The

Pennsylvania legislature has not chosen to waive this immunity for intentional torts." Wicker v.

Shannon, 2010 U.S. Dist. LEXIS 99777, *25 (M.D. Pa. 2010) (Caputo, J.) (citing 42 Pa.C.S.A. §

8522; La Frankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992)). "Defamation is a

state intentional tort." Id. (citing Joseph v. Scranton Times L.P., 959 A.2d 322, 334 (Pa. Super.

Ct. 2008)). Accordingly, "DOC corrections officers are protected from intentional tort claims,

such as defamation, to the extent they were acting in the scope of their employment of the alleged

tort." Id. at *26; see also Ortiz v. Alvarez, 2007 U.S. Dist. LEXIS 29644, *8-9 (D.N.J. 2007)

(dismissing the section 1983 suit alleging defamation). Further, "the under-color-of-state-law

element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory

or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49 (1999). Because

"defamation claims are not cognizable under § 1983", see Cox v. Del. State Police, 2007 U.S.

Dist. LEXIS 52646, *12 (D. Del. 2007) (citing Paul v. Davis, 424 U.S. 693, 701 (1976)), count

two (2) will be dismissed with prejudice.[3]

### C.    Breach of Duty to Protect- Count Three (3)

The motion to dismiss does not mention count three (3). See (Doc. 12). Therefore,

Plaintiff's claim that Defendants Trometter, Collins, and Kovalchik violated the Eighth

Amendment duty to protect will proceed.[4]

---

[3]See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (explaining that a court may deny leave to amend if it would be inequitable or futile).

[4]See Bistrian v. Levi, 2012 U.S. App. LEXIS 19973, *25-26 (3d Cir. 2012) (finding that the plaintiff sufficiently pled a failure to protect claim against the prison defendants who put him in a locked recreation yard with other inmates who knew he was cooperating with prison officials); Cooper v. Beard, 2006 U.S. Dist. LEXIS 80655, *30 (E.D. Pa. 2006) ("[A] correction officer's labeling a prisoner a snitch constitutes an Eighth Amendment violation.").

### D.    Retaliation- Count Four (4)

Plaintiff alleges that he was subjected to several acts of retaliation because he filed a

grievance against Defendant Trometter.  Specifically, Plaintiff claims that Defendant Trometter

threatened to get even with him and spread rumors that Plaintiff was a snitch.  Defendant

Trometter then allegedly filed a false misconduct charge against Plaintiff.  Next, the amended

complaint alleges that Defendant Luquis lectured Plaintiff about filing grievance complaints and,

in retaliation, denied Plaintiff an opportunity to call witnesses or present evidence at his

misconduct hearing.  Plaintiff claims that Defendant Luquis routinely retaliates against inmates

who attempt to include a grievance complaint as evidence in a misconduct hearing by denying

evidence, by failing to review the evidence, and by sanctioning inmates to the RHU.  Finally, the

amended complaint alleges that Defendant Damiter refused to address Plaintiff's grievances

because he "filed too many grievances" and was "going home soon."  Plaintiff claims that

Defendant Damiter's pattern of denying complaints of inmates who are close to their release date

demonstrates retaliation against Plaintiff, and others, for filing grievances.

To establish a retaliation claim, a prisoner must prove: (1) "the conduct which led to the

alleged retaliation was constitutionally protected"; (2) "he suffered some 'adverse action' at the

hands of the prison officials"; and (3) "a causal link between the exercise of his constitutional

rights and the adverse action taken against him".  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir.

2001).  Importantly, a "prisoner's ability to file grievances and lawsuits against prison officials is

a protected activity for purposes of a retaliation claim."  Wicker v. Shannon, 2010 U.S. Dist.

LEXIS 99777, *19-20 (M.D. Pa. 2010) (Caputo, J.) (dismissing due process claim and all but

one retaliation claim), citing Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981).  To

11

satisfy the second Rauser requirement, the prisoner must demonstrate "that the action 'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'" Rauser, 241 F.3d at 333 (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  To show a causal link, a prisoner must prove "that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333.  He must establish: "(1) an unusually suggestive proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link." DeFranco v. Wolfe, 387 Fed. Appx. 147, 154 (3d Cir. 2010).  If neither is proven, the prisoner "must show that, from the evidence in the record as a whole, the trier of fact should infer causation." Id.  Because many prisoners allege retaliation "when confronted with disciplinary action, district courts must view prisoners' retaliations claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner." Sims v. Dragovich, 1999 U.S. Dist. LEXIS 8374, *9-10 (E.D. Pa. 1999).

"Once the initial showing is made by the prisoner, the burden then shifts to the prison official to prove that the same decision would have been made absent the protected conduct for reasons reasonably related to a legitimate penological interest." DeFranco v. Wolfe, 387 Fed. Appx. 147, 154-55 (3d Cir. 2010) (citing Rauser, 241 F.3d at 334).  The "courts should afford deference to decisions made by prison officials." Rauser, 241 F.3d at 334.

### 1.  *Defendant Trometter*

This Court finds that Plaintiff has made a prima facie case of retaliation against Defendant Trometter.  Plaintiff's grievance against Defendant Trometter on March 28, 2010, was protected conduct.  Second, a corrections officer's verbal abuse of an inmate and his

encouragement of other residents to take action against the "snitch" may establish adverse action.
See Rivera v. Marcoantonio, 153 Fed. Appx. 857, 859 (3d Cir. 2005); Bracey v. Pa. Dep't of
Corr., 2012 U.S. Dist. LEXIS 31286, *25 (W.D. Pa. 2012) (finding "adverse action" by a prison
official in denying the inmate food and spreading rumors that the inmate was a snitch and a rat).
Thus, the amended complaint has sufficiently alleged that Plaintiff suffered adverse action when
Defendant Trometter informed other inmates that Plaintiff was a snitch, which resulted in his
physical assault. Additionally, the "prosecution of false misconduct reports qualifies as action
'sufficient to deter a person of ordinary firmness from exercising his constitutional rights.'"
Jacobs v. Pa. Dep't of Corr., 2009 U.S. Dist. LEXIS 86060, *22-23 (W.D. Pa. 2009) (quoting
Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002)). Plaintiff has therefore established that
he suffered another adverse action when Defendant Trometter filed an allegedly false misconduct
report. Having considered the timing of Defendant Trometter's actions and the statements he
allegedly made evidencing his intent, see (Doc. 11, ¶¶ 17, 19-20, 26, 30-31), this Court concludes
that Plaintiff has alleged a causal link between each adverse action and his grievance complaint.

The burden therefore shifts to Defendants to prove that Defendant Trometter would have
made the same decisions absent the protected conduct. As it relates to Plaintiff's claim that
Defendant Trometter retaliated by spreading rumors Plaintiff was a snitch, this Court can
conceive of no reasons for such conduct reasonably related to penological interest. Accordingly,
Plaintiff's retaliation claim against Defendant Trometter for allegedly labeling him a snitch,
which purportedly led to Plaintiff's assault, survives the motion to dismiss. See Freeman v.
Miller, 2011 U.S. Dist. LEXIS 112392, *16-17 (M.D. Pa. 2011) (Munley, J.) (finding sufficient
the prisoner's retaliation claim against Officer Miller for telling another inmate to stab the

13

plaintiff because he was a rat and had filed lawsuits against prison staff).

On the other hand, because the hearing examiner determined there was a legitimate penological basis for the misconduct charge based on "some evidence", this Court determines that Defendants have met their burden of showing that Defendant Trometter would have filed the misconduct report irrespective of Plaintiff's grievance against him.  Importantly, "the finding of guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he would have brought the misconduct charge even if plaintiff had not filed a grievance." Grantham v. Trempus, 2010 U.S. Dist. LEXIS 118776, *16 (W.D. Pa. 2010) (explaining, "the filing of a prison disciplinary report is not actionable under 42 U.S.C. § 1983 as prohibited 'retaliation' unless the report is, in fact, false"); accord Pressley v. Johnson, 2006 U.S. Dist. LEXIS 96954, *19-20 (W.D. Pa. 2006) (stating that a finding of guilt does not necessarily satisfy a defendant's burden of showing that he would have brought the misconduct charge against a prisoner without some supporting evidence), adopted by, 2006 U.S. Dist. LEXIS 70515 (W.D. Pa. 2006).  The defendant need only show "that there is 'some evidence' to support the discipline citation" to defeat an inmate's retaliation claim.  See Solomon v. Walsh, 2012 U.S. Dist. LEXIS 136812, *28 (M.D. Pa. 2012) (Carlson, M.J.) (quoting Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)), adopted by, 2012 U.S. Dist. LEXIS 136814 (M.D. Pa. 2012).

In Nifas, Corrections Officer Stroutman filed five (5) charges against the inmate, including using abusive language, arising from an incident following a cell search.  Nifas v. Coleman, 2012 U.S. Dist. LEXIS 28731, *20-24 (W.D. Pa. 2012), adopted by, 2012 U.S. Dist. LEXIS 28732 (W.D. Pa. 2012).  At the misconduct hearing, the hearing examiner found the inmate guilty of three (3) charges, including using abusive language, based solely on Officer

Stroutman's report. Id. The prisoner raised a retaliation claim under section 1983 alleging that Officer Stroutman filed a false misconduct charge against him. Id. The Court granted the defendants' motion to dismiss the retaliation claim, concluding that the guilt determination "constitutes 'some evidence' sufficient to support a prison disciplinary conviction." Id., citing Hill, 472 U.S. at 455-56; Speight v. Minor, 245 F. App'x 213, 217 (3d Cir. 2007) (determining that "the disciplinary hearing record, specifically the charging officer's report, although meager, constitutes some evidence supporting the DHO's decision").

At the instant misconduct hearing, Defendant Luquis determined that Defendant Trometter's report was more credible than Plaintiff's denial and found Plaintiff guilty of the misconduct charge. See (Doc. 1, Exhibits). The PRC affirmed this decision on appeal as did the Chief Hearing Examiner for the Department of Corrections, stating that the findings "are amply supported by evidence presented at your hearing." (Id.). The Chief Hearing Examiner further concluded that the "writing/drawing in question would certainly result in the issuance of a misconduct under any other circumstance." (Id.). Consequently, this Court concludes that Defendants have met their burden to prove Defendant Trometter would have issued the misconduct charge absent the grievance complaint. The retaliation claim against Defendant Trometter for issuing an allegedly false misconduct report will be dismissed with prejudice.

### 2.    *Defendant Luquis*

Defendants do not specifically address the retaliation claim against Defendant Luquis in the motion to dismiss. Rather, they discuss the conduct of Defendant Luquis in relation to Plaintiff's due process claim. The importance of the distinction between these counts is discussed below. Plaintiff's retaliation claim against Defendant Luquis for denying and/or

refusing to consider evidence of a grievance complaint before making a guilt determination at his misconduct hearing will therefore be allowed to proceed.

### 3.   *Defendant Damiter*

Defendants contend there is no First Amendment right to access a prison grievance process and, consequently, the retaliation claim against Defendant Damiter for refusing to consider Plaintiff's complaints when he[5] was nearing his release date should be dismissed.  This Court recognizes that because "[p]risoners do not have a constitutional right to prison grievance procedures... [, the] alleged obstruction of such procedures is not independently actionable." Heleva v. Kramer, 214 Fed. Appx. 244, 247 (3d Cir. 2007).  However, if the obstruction was in retaliation for constitutionally protected conduct, such as filing a grievance complaint, the prisoner may have a First Amendment claim.  Id.; Arce v. Sapp, 2011 U.S. Dist. LEXIS 136466, *30-32 (D.N.J. 2011).  Accordingly, Defendants' argument in support of dismissal is unpersuasive.  See Ellis v. United States, 2011 U.S. Dist. LEXIS 86927, *40 (W.D. Pa. 2011) (holding that "it is more likely that a prisoner might give up filing grievances if he knows they will not be processed", finding a genuine issue of material fact regarding whether the prisoner suffered an adverse action, and rejecting the defendants' argument that their refusal to process grievances does not support a retaliation claim because there is no constitutional right to an administrative remedy process), adopted by, 2011 U.S. Dist. LEXIS 83833 (W.D. Pa. 2011).  The

---

[5]Although the amended complaint alleges that Defendant Damiter retaliated "against Plaintiff **(and others)** for filing grievance complaints", see (Doc. 11, ¶ 80) (emphasis added), Plaintiff's claim is limited to the alleged retaliation he endured.  See Binkley v. Rendell, 2012 U.S. Dist. LEXIS 10795, *25 (M.D. Pa. 2012) (Rambo, J.) (explaining that a prisoner may not bring claims on behalf of other inmates), citing Alexander v. N.J. State Parole Bd., 160 Fed. Appx. 249, 250 (3d Cir. 2005).

motion to dismiss Defendant Damiter from count four (4) will be denied.

### E.      Denial of Basic Human Needs- Count Five (5)

Defendants assert that Plaintiff's Eighth Amendment claim for denial of basic human

needs should be dismissed because Wickersham and Shaeffer are not named as Defendants.

Pursuant to Rule 10(a) of the Federal Rules of Civil Procedure, "[t]he title of the complaint must

name all the parties." FED. R. CIV. P. 10(a).  Here, Plaintiff failed to name either Wickersham or

Shaeffer in the caption of the amended complaint, and did not list them in the party identification

section. See (Doc. 11).  But, Wickersham and Shaeffer are included in the factual allegations

and specifically named in count five (5).  (Id. at ¶¶ 43-55, 82-83).  Moreover, Plaintiff

acknowledges his failure to name these individuals as Defendants, but apparently believes it is

unnecessary because their actions were in response to Defendant Trometter's conduct.  (Id.)

(stating, "Wickersham and Shaeffer are not mentioned as Defendants.  Their actions are in direct

response to Defendants Trometter [sic] falsified misconduct....").

If Plaintiff's intent is to seek relief from Defendant Trometter based on the actions of

Wickersham and Shaeffer, then he must allege additional facts showing that Defendant Trometter

was personally involved in their decisions.  If, on the other hand, Plaintiff wishes to include

Wickersham and Shaeffer in his demand for relief based on their own actions, he must comply

with Rule 10 and name them in the caption and identification section of his complaint.  Plaintiff

will be granted leave to amend in this regard.  See Kedra v. Philadelphia, 454 F. Supp. 652, 657

n.1 (E.D. Pa. 1978) (stating that a party's failure to name an individual in the caption of the

complaint should be corrected by amendment).

The motion to dismiss also contends that the allegations against Wickersham and

Shaeffer for denying Plaintiff meals, showers, laundry,[6] and exercise do not state a cognizable claim of cruel and unusual punishment. See (Doc. 13, p. 19 n.4) (citing Veteto v. Miller, 829 F. Supp. 1486, 1495-96 (M.D. Pa. 1992) (Conaboy, J.); Black v. Donald, 2006 U.S. Dist. LEXIS 99557, *17-18 (M.D. Ga. 2006)).  Defendants argue that Plaintiff's deprivations, occurring in periods of eight (8) and eleven (11) weeks, were not objectively serious and far shorter than the deprivation times discussed in other courts. Id. (citing Randolph v. McBride, 1995 U.S. App. LEXIS 27791 (7th Cir. 1995); Lemaire v. Maass, 12 F.3d 1444 (9th Cir. 1993); Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)).  Plaintiff's opposition brief does not address this count.

A prison official violates the Eighth Amendment when: (1) the prisoner suffers an objectively, sufficiently serious deprivation; and (2) the prison official acts with deliberate indifference to the prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Fortune v. Hamberger, 379 Fed. Appx. 116, 122 (3d Cir. 2010) (stating, "an inmate [is required] to show that 'he is incarcerated under conditions posing a substantial risk of serious harm,' and that prison officials demonstrated a 'deliberate indifference' to his health or safety").  Under the first element, a "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" Farmer, 511 U.S. at 834.  To establish deliberate indifference under the second element, the prison official must: (1) know of and disregard an excessive risk to inmate health or safety; (2) be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (3) draw the inference. Id. at 837.

------

[6]The only allegation regarding the denial of laundry services is made against Sergeant Snyder, who is not named as a Defendant in the caption of the amended complaint or in count five (5). See (Doc. 11, ¶ 43).

Plaintiff's Eighth Amendment claims can be separated into three (3) categories. Importantly, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise ." Wilson v. Seiter, 501 U.S. 294, 304-05 (1991) (explaining the Court's statement in Rhodes v. Chapman, 452 U.S. 337, 347 (1981), that conditions of confinement, "alone or in combination," may deprive prisoners of the minimal civilized measure of life's necessities). "[F]or example, a low cell temperature at night combined with a failure to issue blankets" may result in a constitutional violation. Id. But, a low cell temperature and the denial of a breakfast tray does not state a cognizable claim for relief. "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." Wilson, 501 U.S. at 305.

### 1.    *Denial of Food*

Plaintiff's allegations that he was denied breakfast and lunch on six (6) days is insufficient to support an Eighth Amendment claim. See Adderly v. Ferrier, 2010 U.S. Dist. LEXIS 64266, *29 (W.D. Pa. 2010) (concluding that the denial of breakfast and lunch to a prisoner for seven (7) consecutive days, in the absence of a showing that the dinners did not satisfy some minimum daily quantum of calories adequate for health, did not establish an Eighth Amendment violation). "The Constitution requires 'that prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it' [and] under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional

dimension.'" Moore v. Cucchi, 2011 U.S. Dist. LEXIS 112582, *15-16 (D.N.J. 2011) (quoting

Robles v. Coughlin, 725 F. 2d 12, 15 (2d Cir. 1983)).  However, "prison officials cannot be held

liable under the [constitutional standard] unless the prisoner shows both an objectively serious

risk of harm and that the officials knew about it and could have prevented it but did not.'"

Moore, 2011 U.S. Dist. LEXIS 112582 at *16 (quoting Mays v. Springborn, 575 F. 3d 643, 648

(7th Cir. 2009)).  "[M]ere hunger is not sufficient to show an Eighth Amendment violation."

Adderly, 2010 U.S. Dist. LEXIS 64266 at *29.  Consequently, Plaintiff's allegations regarding

the denial of food will be dismissed without prejudice.

### 2.   *Denial of Showers*

Plaintiff alleges that he was denied showers on twenty-eight (28) occasions during the

months of September and October 2010.  It is unclear however, whether he was denied showers

in consecutive weeks or only allowed to shower every other day.  The later is not a constitutional

violation.  See Tapp v. Proto, 404 Fed. Appx. 563, 567 (3d Cir. 2010) (finding no constitutional

violation where the prisoner was denied access to the exercise and shower facilities two days

each week).  The former circumstance may also fail to establish an Eighth Amendment claim, but

Plaintiff will be given an opportunity to amend his complaint.  See Wivell v. Adams County

Adult Corr. Facility, 2007 U.S. Dist. LEXIS 53847, *7-8 (M.D. Pa. 2007) (McClure, J.)

(determining that "the denial of showers for two weeks is not a constitutional violation").  In

deciding whether to renew this claim in a second amended complaint, Plaintiff is advised that the

"Eighth Amendment does not require that inmates receive frequent showers." Briggs v.

Heidlebaugh, 1997 U.S. Dist. LEXIS 7673, *8-9 (E.D. Pa. 1997) (concluding that the prisoner's

claim that he was not allowed to take a shower for two weeks did not rise to a constitutional

deprivation). Plaintiff's allegations of shower deprivation will be dismissed without prejudice.

### 3.    *Denial of Exercise*

The amended complaint alleges that throughout September and October 2010, Plaintiff

was denied yard exercise thirty-four (34) times. Plaintiff also claims that he, and other RHU

inmates, do not have access to the same exercise equipment as inmates in general population.

The amended complaint does not, however, allege that the lack of exercise time or access to

equipment threatened his health and, therefore, does not state a constitutional violation. To

establish an Eighth Amendment violation based on the denial of exercise, a prisoner "must

demonstrate that such a denial is sufficiently serious to deprive [him] of the minimal civilized

measure of life's necessities." Gattis v. Phelps, 344 Fed. Appx. 801, 805 (3d Cir. 2009)

(determining that the prisoner "was not guaranteed outdoor exercise at all times" and the

limitation of exercise to three (3) days per week was insufficiently serious to implicate the Eighth

Amendment), citing Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 418 (3d Cir. 2000).

"[M]eaningful recreation 'is extremely important to the psychological and physical well-being of

the inmates.'" Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988) (quoting Spain v.

Procunier, 600 F.2d 189, 199 (9th Cir. 1979)). "However, lack of opportunity to exercise can

only rise to a constitutional level 'where movement is denied and muscles are allowed to atrophy,

[and] the health of the individual is threatened.'" Dickens v. Danberg, 2012 U.S. Dist. LEXIS

80078, *18 (D. Del. 2012) (finding no constitutional violation for a three (3) month deprivation

of exercise), quoting Spain, 600 F.2d at 199; see also Dockery v. Legget, 2012 U.S. Dist. LEXIS

96733, *68-69 (W.D. Pa. 2012); Austin v. Guarini, 1997 U.S. Dist. LEXIS 987, *11-14 (E.D. Pa.

1997) (finding no Eighth Amendment violation where the prisoner was deprived of the

opportunity to use the exercise equipment in the gymnasium). Plaintiff's Eighth Amendment claim for denial of exercise will be dismissed without prejudice. See Illes v. Deparlos, 2012 U.S. Dist. LEXIS 3192, *6-7 (M.D. Pa. 2012) (Caldwell, J.) (finding "insufficient evidence to support an inference of deliberate indifference to a substantial risk of serious harm" where the prisoner was denied out-of-cell exercise for twenty-eight (28) consecutive days).

F.     **Denial of Due Process- Count Six (6)**

"A prisoner facing the loss of a legally cognizable liberty interest following disciplinary proceedings has a due process right to certain procedural protections, including the opportunity to call witnesses and present documentary evidence." Dunbar v. Barone, 2012 U.S. App. LEXIS 14040, *8-9 (3d Cir. 2012) (addressing an inmate's claim that his procedural due process rights were violated when he was not permitted to call witnesses at his misconduct hearing), citing Wolff, 418 U.S. at 566-67. But, "this due process right is not triggered unless the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Id. (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Defendants argue that Plaintiff received the procedural protections required by Wolff, 418 U.S. 539. (Doc. 13). They assert that count six (6) should be dismissed because Plaintiff did not have a protected liberty interest in remaining free from disciplinary custody following his misconduct proceeding. (Id.) (citing Sandin, 515 U.S. at 486).

Plaintiff attempts to distinguish Wolff by arguing that his is not a case of loss of good-time credit, but is based on Defendant Trometter's issuance of a false misconduct charge out of retaliation. (Doc. 14). He asserts, "[t]he question here isn't whether 'this court should dismiss [Plaintiffs] [sic] claims based upon violations of his right to due process at his misconduct...'"

22

hearing, but whether Defendant Trometter's retaliation deprived Plaintiff of his constitutional

rights. (Id.). Plaintiff also argues that Defendant Luquis failed to explain why she denied his

request for witnesses and documentary evidence. (Id.). He contends that an inmate should be

allowed to call witnesses and present evidence if it will not jeopardize institutional safety or

correctional goals. (Id.) (citing Wolff, 418 U.S. at 566-67).

Contrary to Plaintiff's argument, as it relates to the due process count, the question is

indeed whether this Court should dismiss his claim based upon violations of due process at his

misconduct hearing.[7]  Plaintiff was found guilty of the misconduct charge and sanctioned to

ninety (90) days in the RHU. Courts have repeatedly held that ninety (90) days disciplinary

confinement is not an atypical and significant hardship sufficient to implicate a liberty interest

and trigger due process protections. See Henderson v. Kerns-Barr, 313 Fed. Appx. 451, 452 (3d

Cir. 2008) (affirming summary judgment on the prisoner's due process claim because her ninety

(90) day disciplinary confinement did not implicate a liberty interest); Griffin v. Williams, 2011

U.S. Dist. LEXIS 88524, *25-26 (M.D. Pa. 2011) (Rambo, J.) (finding it unnecessary to examine

the inmate's due process arguments, or to allow leave to amend, because a ninety (90) day

placement in disciplinary segregation is not significant enough to constitute an atypical and

significant hardship so as to trigger due process protection). Therefore, Defendant Luquis did not

---

[7]Whether Defendant Trometter's retaliation deprived Plaintiff of his constitutional rights
was properly addressed in the analysis of count four (4). See Thomas v. McCoy, 467 Fed. Appx.
94, 96 n.3 (3d Cir. 2012) (explaining that allegations of falsely issued misconduct reports should
be analyzed as claims of retaliation, not due process); Brown v. Hannah, 850 F. Supp. 2d 471,
476-79 (M.D. Pa. 2012) (Nealon, J.) (addressing the inmate's allegations regarding the issuance
of a false misconduct charge under his retaliation claim, not his due process count); Cotto v.
Tennis, 2010 U.S. Dist. LEXIS 66033, *10 (M.D. Pa. 2010) (Vanaskie, J.) ("[T]he filing of a
false disciplinary charge is not a constitutional violation unless the charge was filed in retaliation
for the exercise of a constitutional right.").

need to explain why she denied Plaintiff's request for witnesses and documentary evidence. See Crosby v. Piazza, 465 Fed. Appx. 168, 171-73 (3d Cir. 2012) (dismissing the inmate's due process claim that he was not permitted to present witnesses at his misconduct hearing because placement in the RHU for 270 days did not constitute an "atypical and significant hardship" under Sandin to attach the due process protections of Wolff); Douvos v. Quintana, 382 Fed. Appx. 119, 122 (3d Cir. 2009) (holding that because the inmate did not have a constitutionally protected interest, he had no right to present witnesses or documentary evidence at the discipline committee hearing). See also Greer v. Hogston, 288 Fed. Appx. 797, 799 (3d Cir. 2008) (concluding that an inmate's claim of bias does not support a due process claim without evidence that the hearing officer was involved in reporting or investigating the misconduct or was in any way personally or substantially involved in the circumstances underlying the charge).

Additionally, false misconduct reports do not in and of themselves trigger due process protection. See Walthour v. Tennis, 2008 U.S. Dist. LEXIS 72710, *15 (M.D. Pa. 2008) (Vanaskie, J.). In Brown, this Court considered an inmate's allegations that he was issued a false misconduct charge and that the hearing examiner denied a witness and an opportunity for cross-examination. Brown, 850 F. Supp. 2d 471. This Court concluded that the inmate did not have due process protection, regardless of the allegations of a false charge, because sixty (60) days in disciplinary confinement does not constitute an atypical and significant hardship as to implicate a protected liberty interest. Id. at 477-78. Accordingly, the issuance of a falsified misconduct report and denial of the chance to call witnesses did not violate due process. Id. at 478.

In the absence of procedural protections at his misconduct hearing, Plaintiff's claim that Defendant Luquis violated due process will be dismissed with prejudice. Consequently,

Plaintiff's allegations that Defendants Kovalchik, Derfler, Kephart, and Collins violated his due process rights by failing to correct Defendant Luquis's procedural violations will also be dismissed with prejudice.

Moreover, Defendants argue that the due process claims against Defendants Kovalchik, Derfler, Kephart, and Collins should be dismissed because Plaintiff failed to establish their personal involvement. Defendants assert, "they merely ratified respective Departmental disciplinary actions." (Doc. 13) (citing Rauso v. Vaughn, 2000 U.S. Dist. LEXIS 9035 (E.D. Pa. 2000)). In his opposition brief, Plaintiff points to his allegations in paragraphs 21, 23, 27, and 32 of the amended complaint as evidence of personal involvement. Specifically, that Defendants Kovalchik, Derfler, Kephart, and Collins knew of Plaintiff's request for transfer from the housing block due to the danger Defendant Trometter caused by calling him a rat and a snitch, but failed to remove him of the housing block. (Doc. 14).

This Court finds that the allegations in paragraphs 21, 23, and 27 of the amended complaint tend to support Plaintiff's claim for breach of duty to protect, count three (3). Paragraph 32, while mentioning the falsified misconduct charge, alleges conduct by Defendant Damiter, who is not named in the due process count. Plaintiff's reference to these allegations is therefore unpersuasive in deciding the sufficiency of his due process count.[8]

A "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also West v. Atkins, 487 U.S. 42, 48

---

[8]Importantly, this Court has addressed Defendants' conduct under the cognizable constitutional Amendments.

(1988); Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997). The filing of grievances, alone, is insufficient to show the actual knowledge necessary for personal involvement. See Rode, 845 F.2d at 1208. Additionally, prison officials cannot be held liable based solely on their failure to take corrective action when grievances or investigations were referred to them. See Pressley v. Beard, 266 Fed. Appx. 216 (3d Cir. 2008); Hughes v. Smith, 237 Fed. Appx. 756, 758 (3d Cir. 2007) (holding, the "alleged failure to process [the inmate's] grievances did not violate his rights to due process and is not actionable"); Tabb v. Hannah, 2012 U.S. Dist. LEXIS 106529, *15 (M.D. Pa. 2012) (Caldwell, J.) (stating, "a prison official's failure to agree with an inmate's allegations, or take a specific action requested by a prisoner, does not without more, indicate unconstitutional conduct by the investigators or those who respond to the grievance"), citing Alexander v. Forr, 2006 U.S. Dist. LEXIS 70002 (M.D. Pa. 2006) (Vanaskie, J.); Williams v. Klem, 2008 U.S. Dist. LEXIS 76814, *27 (M.D. Pa. 2008) (Vanaskie, J.) (concluding, "the fact that these defendants responded inappropriately to [the inmate's] grievances about unconstitutional acts that occurred prior to their review of his grievance does not establish their personal involvement in the alleged wrongdoing sufficient to assert a Section 1983 claim"). Here, the amended complaint fails to sufficiently allege the personal involvement of Defendants Kovalchik, Derfler, Kephart, and Collins.

Next, it appears from the amended complaint that Plaintiff attempts to bring a due process claim against Defendants Kovalchik, Derfler, Kephart, Collins, and Luquis for the allegedly poor conditions of Plaintiff's confinement, including food, shower, and exercise deprivations and excessive body cavity searches. See (Doc. 11, ¶¶ 86-87). However, "complaints concerning the conditions of [] confinement are properly cognizable under the Eighth Amendment." Betts v.

New Castle Youth Dev. Ctr., 621 F.3d 249, 260-61 (3d Cir. 2010).  Challenges to strip searches

may be raised under either the Fourth or Eighth Amendments.  See Seymour/Jones v. Spratts,

1990 U.S. Dist. LEXIS 193, *4 (E.D. Pa. 1990) (explaining that a prisoner's challenge to a strip

search may be cognizable under 42 U.S.C. § 1983 through the Fourth or Eighth Amendments),

citing Bell v. Wolfish, 441 U.S. 520, 558-60 (1979).  "[W]here a particular amendment provides

an explicit textual source of constitutional protection against a particular sort of government

behavior, that Amendment, not the more generalized notion of substantive due process, must be

the guide for analyzing these claims."  See County of Sacramento v. Lewis, 523 U.S. 833, 841-42

(1998)), quoting Graham v. Connor, 490 U.S. 386, 395 (1989); see also Walthour v. Tennis,

2008 U.S. Dist. LEXIS 8032, *15 (M.D. Pa. 2008) (Vanaskie, J.) ("Because Plaintiff's claim for

deliberate indifference is covered under the Eighth Amendment, he cannot assert a claim under

any other constitutional provision."); Giddings v. Joseph Coleman Ctr., 473 F. Supp. 2d 617, 623

(E.D. Pa. 2007) (holding, "Eighth Amendment protection from cruel and unusual punishment,

which includes protection from deliberate indifference under Estelle v. Gamble, 429 U.S. 97, 97

S. Ct. 285, 50 L. Ed. 2d 251 (1976), trumps Fourteenth Amendment due process analysis"),

citing Whitley v. Albers, 475 U.S. 312, 327 (1986).  Plaintiff's due process complaints about the

conditions of confinement will therefore be dismissed with prejudice.  To the extent Plaintiff

attempts to raise due process violations for Defendants' denial of his grievances on this subject,

the claim fails because prison officials cannot be liable based solely on their failure to take

corrective action.  See Toolasprashad v. Williams, 2009 U.S. Dist. LEXIS 39109, *19 (D.N.J.

2009) ("To the extent that Plaintiff seeks to assert a due process claim based on the failure to

respond to and correctly process his administrative remedies, this claim fails.").  Accordingly,

Plaintiff's due process claim regarding the denial of food, showers, and exercise, and the excessive strip searches will be dismissed with prejudice.[9]

### G.   Strip Searches

Plaintiff alleges that he was subjected to irregular and excessive body cavity strip searches involving many unnecessary steps that were contrary to prison policy.  Plaintiff claims that these extra steps, which were degrading and unsanitary, caused him to become ill.  The amended complaint does not mention the body cavity searches in the Eighth Amendment count; rather, Plaintiff complains of the "irregular and excessive body cavity searches", along with food, exercise, and shower deprivations, as an "extreme and severe" condition of confinement in count six (6), denial of due process.  Defendants do not specifically address these allegations in the motion to dismiss.

As previously discussed, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Betts, 621 F.3d at 260-61 (explaining the more-specific-provision rule), quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).  Moreover, pro se pleadings must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  A court will apply the applicable law irrespective of whether the unrepresented litigant mentioned it by name.  See Higgins v. Beyer,

---

[9]The amended complaint alleges that Wickersham and Shaeffer were responsible for the strip searches and denials of food, showers, and exercise, not Defendants Kovalchik, Derfler, Kephart, Collins, or Luquis.  Thus, Plaintiff fails to establish the personal involvement of these Defendants in his challenge to prison conditions.  If Plaintiff raises the conditions of confinement in a second amended complaint under the proper constitutional Amendment, he must also allege additional facts to establish the personal involvement of all Defendants named in that count.

293 F.3d 683, 688 (3d Cir. 2002); Allen v. Warden of Dauphin County Jail, 2008 U.S. Dist.

LEXIS 74752, *5 n.6 (M.D. Pa. 2008) (Conner, J.) (reasoning, that "the court is obligated to

construe [a pro se inmate's] complaint liberally and to 'apply the relevant law, regardless of

whether the pro se litigant has identified it by name'"), citing Smith v. Johnson, 202 F. App'x

547, 549 (3d Cir. 2006).  When a pro se plaintiff frames his claim in terms of one particular

constitutional Amendment, the court will not limit his allegations to a theory of recovery under

that Amendment.  See Welch v. Nunn, 2006 U.S. Dist. LEXIS 86045, *19 n.8 (D.N.J. 2006)

(addressing the plaintiff's retaliation claim under the correct Amendment, despite the fact that he

couched his retaliation argument as an Eighth Amendment violation); see also Brown v.

Montgomery County, 2005 U.S. Dist. LEXIS 10335 (E.D. Pa. 2005).

     A prisoner's challenge to a strip search may be cognizable under 42 U.S.C. § 1983

through the Fourth or Eighth Amendments.  See Seymour/Jones v. Spratts, 1990 U.S. Dist.

LEXIS 193, *4 (E.D. Pa. 1990), citing Bell, 441 U.S. at 558-60.  To raise a Fourth Amendment

claim, the prisoner must allege that the strip search was unreasonable.  See Payton v. Vaughn,

798 F. Supp. 258, 261-62 (E.D. Pa. 1992).  Where a prisoner alleges that the strip search was

conducted in a physically abusive manner, the Eighth Amendment applies.  See Jordan v. Cicchi,

428 Fed. Appx. 195, 199-200 (3d Cir. 2011) (explaining that an excessive force claim arising

from a strip search may proceed under either the Fourth Amendment or the Eighth Amendment,

but the latter is "the primary source of protection after an individual's conviction"); Robinson v.

Ricci, 2012 U.S. Dist. LEXIS 44011, *50 n.6 (D.N.J. 2012) (stating that, in addition to a possible

Fourth Amendment violation, the "Eighth Amendment may be implicated where the strip search

or visual body cavity search was conducted in a brutish and unreasonable manner").

Here, the amended complaint alleges that in the two (2) months Plaintiff was confined in the RHU, Wickersham and Shaeffer subjected him to "irregular and excessive" body cavity strip searches as a means of harassment. Plaintiff complains that every time he left his cell to go to the fenced pen yard, and again when he returned to his cell an hour later, an eleven (11) step body cavity strip search was performed that required him to: (1) remove his close; (2) run his fingers through his hair; (3) sweep his fingers around the gums in his mouth and move his tongue up and down; (4) show both sides of his hands; (5) move his ear so the ear cavity can be inspected; (6) lift his arms; (7) lift his penis and testicles; (8) bend over; (9) open his buttocks; (10) undergo a pat down; and (11) undergo a metal detector scan at a concrete slab in the yard. (Doc. 11, ¶ 47). Plaintiff alleges that he developed soar throats and became ill as a result of having to place his fingers in his mouth for a visual inspection thereof after having been in the yard without washing his hands and having touched, inter alia, his genitals as part of the search.

This Court finds no constitutional violation in the frequency of the strip searches. The Third Circuit Court of Appeals has held that prison officials may conduct visual body cavity searches whenever an inmate enters and exits his cell in the RHU, if performed in a reasonable manner. Millhouse v. Arbasak, 373 Fed. Appx. 135, 137 (3d Cir. 2010) (citing Bell v. Wolfish, 441 U.S. 520, 559-60 (1979)). "When a prisoner moves through restricted areas of a correctional facility, it is not unreasonable for staff to check for contraband via visual body cavity searches upon the prisoner's return." Jones v. Luzerne County Corr. Facility, 2010 U.S. Dist. LEXIS 86430, *22-23 (M.D. Pa. 2010) (Vanaskie, J.) (citing Millhouse, 373 Fed. Appx. 135). Further, strip searches can be conducted by prison officials without probable cause. Jones, 2010 U.S. Dist. LEXIS 86430 at *22 ("[I]nmates do not have a right 'to be free from strip searches."), citing

Bell, 441 U.S. at 558.

Plaintiff's allegation that the searches were degrading and his complaint of having to run his fingers in his mouth after touching his genitals also fail to state a constitutional violation. See Millhouse, 373 Fed. Appx. at 137 (body cavity strip "searches, even if embarrassing and humiliating, do not violate the constitution"). In Brown, the inmate alleged Fourth Amendment and Eighth Amendment violations relating to three (3) strip searches where "he was required to sweep his mouth with his finger after he had been directed to touch his genitals." Brown v. Blaine, 185 Fed. Appx. 166, 168-69 (3d Cir. 2006), cert. denied, 549 U.S. 1064 (2006). The inmate claimed the searches were unsanitary, embarrassing, and in retaliation for having filed grievances against prison personnel. Id. The Third Circuit Court of Appeals determined that similar searches "have been held to be constitutional time and again." Id. at 169-70, citing Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997) (holding that a strip search performed in front of other inmates in which the prisoner was "told to 'run his fingers around his gums' after manipulating his genitalia" did not violate the constitution); Del Raine v. Williford, 32 F.3d 1024, 1038-41 (7th Cir. 1994) (concluding that there was no constitutional violation in a rectal search conducted in the lobby area of the prison's hospital); Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988) (finding constitutional the prison's policy that requires visual body cavity searches every time an inmate leaves/returns to the maximum security unit); Goff v. Nix, 803 F.2d 358, 366-67, 378 (8th Cir. 1986) (upholding a prison policy that visual body cavity searches are performed before/after contact visits, before/after being outside the prison, and before/after a segregated prisoner has mixed with the general population without supervision or restraints). The Court stated that although Brown "may have suffered embarrassment and

31

humiliation while the search was being conducted, we cannot conclude that Brown's constitutional rights were violated by the search procedures employed." Brown, 185 Fed. Appx. at 170.

This Court concludes that because the strip searches were not unreasonable, Plaintiff has failed to allege a valid Fourth Amendment violation. See Payton, 798 F. Supp. at 261-62. Next, the Court will consider whether Plaintiff's allegations raise an Eighth Amendment claim.

The amended complaint does not allege that Defendants conducted the searches in an abusive fashion or with excessive force. See Payton, 798 F. Supp. at 261-62 (dismissing the prisoner's Eighth Amendment challenge to the strip search because he did not allege that the search was conducted with unnecessary force, and embarrassment does not offend the Constitution). Other than the pat down search and being escorted by the arm to a concrete slab in the yard for the metal detector search, Plaintiff does not allege that he was physically touched. Although Plaintiff asserts that he became ill due to the manner in which the search was administered, he fails to plead sufficient facts to establish that Defendants were subjectively aware of the risk to his health and then disregarded a risk of serious harm. See Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000), citing Farmer, 511 U.S. at 837 (holding that "a prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety). Consequently, Plaintiff has failed to state an Eighth Amendment claim for relief.

Plaintiff's claims regarding the body cavity searches will be dismissed, with prejudice under the Fourth Amendment and without prejudice under the Eighth Amendment. Plaintiff is reminded that if he intends to seek relief from Wickersham and Shaeffer pursuant to the Eighth

Amendment in a second amended complaint, he must comply with Rule 10 of the Federal Rules of Civil Procedure. If Plaintiff wishes to hold any other Defendant liable for his/her conduct regarding the strip searches, he must plead additional facts establishing that Defendant's personal involvement.

### H.   Monetary Damages

Defendants contend that Plaintiff's request for monetary damages against them in their official capacities should be dismissed for failure to state a claim. (Doc. 13). In his opposition brief, Plaintiff asserts that he seeks damages against Defendants in their individual capacities and that the Eleventh Amendment does not bar personal capacity suits under section 1983. (Doc. 14) (citing Hafer v. Melo, 502 U.S. 21 (1991)). Accordingly, any request for monetary damages against Defendants in their official capacities will be dismissed.

### I.   Amended Complaint

Plaintiff will be directed to file a second amended complaint addressing the deficiencies identified in this Memorandum. Plaintiff is advised that the second "amended complaint must be complete in all respects." Young v. Keohane, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992) (Conaboy, J.). It must be a new pleading which stands by itself without reference to the original complaint. Id. The second amended complaint "may not contain conclusory allegations[; r]ather, it must establish the existence of specific actions by the defendants which have resulted in constitutional deprivations." Id. (citing Rizzo v. Goode, 423 U.S. 362 (1976)). "The amended complaint must also be 'simple, concise, and direct' as required by the Federal Rules of Civil Procedure." Id. (citing FED. R. CIV. P. 8(e)(1)).

## Conclusion

Although there is no constitutional right to watch television, Plaintiff's allegations that he was denied television privileges based on race discrimination sufficiently state an equal protection claim under the Fourteenth Amendment.  Defendants motion to dismiss count one (1) will be denied.

Count two (2) will be dismissed with prejudice because defamation claims are not cognizable in a section 1983 action.

Defendants did not address count three (3) in their motion to dismiss; thus, the breach of duty to protect claim will proceed.

Plaintiff's retaliation claim, count four (4), will be dismissed in part.  The motion to dismiss the claim that Defendant Trometter retaliated by spreading rumors that Plaintiff was a rat and a snitch will be denied.  However, Defendants have met their burden of showing that because Plaintiff was found guilty of the misconduct charge, Defendant Trometter would have issued the misconduct irrespective of Plaintiff's grievances.  The retaliation claim against Defendant Trometter for issuing an allegedly false misconduct report will therefore be dismissed.  In the absence of a request for dismissal, Plaintiff's retaliation claim against Defendant Luquis for denying and/or refusing to consider evidence of a grievance complaint before making a guilt determination at a misconduct hearing will move forward.  The retaliation count against Defendant Damiter for refusing to consider Plaintiff's complaints because he was close to being released will proceed because although prisoners do not have a constitutional right to grievance procedures, the amended complaint sufficiently alleges that Defendant Damiter's decisions were in retaliation for constitutionally protected conduct.

The Eighth Amendment claim for denial of basic human needs, count five (5), will be dismissed without prejudice. Plaintiff fails to allege that the denial of meals or exercise presented an immediate danger to his health. As to shower deprivation, the amended complaint does not contain sufficient facts to state a constitutional violation. Moreover, Plaintiff is advised that if he wants to hold Defendant Trometter liable for the actions of Wickersham and Shaeffer he must plead additional facts showing Defendant Trometter's personal involvement. If, on the other hand, Plaintiff intends to include Wickersham and Shaeffer in his claim for relief, then the caption of the second amended complaint must properly identify these individuals as Defendants.

Count six (6) will be dismissed in its entirety with prejudice. First, Plaintiff's sentence of ninety (90) days disciplinary confinement was not an atypical and significant hardship sufficient to implicate a liberty interest, and false misconduct reports do not in and of themselves trigger due process protection. Second, the response of Defendants Kovalchik, Derfler, Kephart, and Collins regarding Plaintiff's grievances cannot form the basis of a due process violation, and the amended complaint failed to sufficiently allege their personal involvement. Third, Plaintiff cannot support a due process count based on the allegedly poor conditions of confinement because these claims are cognizable under other specific constitutional Amendments.

Plaintiff's claims regarding the body cavity searches may be raised under the Fourth or Eighth Amendments. Thus, the Fourteenth Amendment count on this issue will be dismissed with prejudice. Also, because the strip searches were performed in a reasonable manner, any Fourth Amendment claim will be dismissed with prejudice. The amended complaint also fails to establish an Eighth Amendment violation. There was no use of excessive force and although Plaintiff asserts that he became ill as a result of the way the strip searches were conducted, he

35

does not allege that the prison officials knew of the risk to his health and then disregarded a risk of serious harm.  The Eighth Amendment claim surrounding the strip searches will be dismissed without prejudice.

Finally, all requests for monetary damages against Defendants in their official capacities will be dismissed.

Plaintiff will be directed to file a second amended complaint.

A separate Order will be issued.

**Date:**  November 27, 2012

**United States District Judge**