UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

SEAN MILLER,                          :
                                      :
            Plaintiff                 :      No. 4:CV-11-0811
                                      :
     vs.                              :      (Judge Nealon)
                                      :
K. TROMETTER, et al.,                 :                        **FILED**
                                      :                        **SCRANTON**
            Defendants                :                        OCT 0 9 2014

                    **MEMORANDUM**            PER _____
                                                 DEPUTY CLERK

## I.   **Background**

Plaintiff, Sean Miller, an inmate formerly confined in the State Correctional
Institution, Frackville ("SCI-Frackville")[1], Pennsylvania, filed the above captioned
civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1, Complaint). He alleges,
inter alia, that he received a retaliatory misconduct and was subsequently denied
due process at the hearing thereon and in the appeal process. Id. Plaintiff names
as Defendants the following SCI-Frackville employees: Superintendent Collins;
Deputy Superintendent Kovalchik; Deputy Superintendent Defler; Program
Manager Kephart; Superintendent's Assistant Peter Damiter; Hearing Examiner
Sharon Luquis; and Correctional Officer K. Trometter. Id.

On August 18, 2011, Plaintiff filed an Amended Complaint. (Doc. 11). In

---

[1]Plaintiff currently resides at 1255 S. 21st Street, Lincoln, Nebraska.

response thereto, Defendants filed a Motion to Dismiss Less than All the Claims in this Amended Complaint. (Doc. 12).

By Memorandum and Order dated November 27, 2012, this Court dismissed, with prejudice, Plaintiff's claims of defamation (Count 2); retaliation against Defendant Trometter for issuing a false misconduct charge (Count 4); denial of Due Process with respect to misconduct hearing (Count 6); claims regarding body cavity searches under the Fourth and Fourteenth Amendments; and Plaintiff's request for monetary damages against Defendants in their official capacities. (Doc. 16, 17, Memorandum and Order). Plaintiff's claims regarding the denial of basic human needs (Count 5), and body cavity searches under the Eighth Amendment were dismissed without prejudice. Id. Defendants' motion to dismiss[2] was denied with respect to Plaintiff's claim of racial discrimination (Count 1); and Plaintiff's claim of retaliation against Defendant Trometter for spreading rumors that Plaintiff was a rat and snitch (Count 4). Id. Plaintiff was then granted thirty (30) days within which to file a second amended complaint in accordance with the Court's November 27, 2012 Memorandum and Order. Plaintiff was advised the second amended complaint "must be a new pleading

---

[2]Defendants did not address Plaintiff's claim of breach of duty to protect (Count 3) in their motion. As such, it was permitted to proceed. Id.

which stands by itself without reference to the original complaint." Id.

On January 31, 2013, Plaintiff filed a Second Amendment Complaint. (Doc. 20).  Missing from the Second Amended Complaint are several claims that were permitted to proceed following the disposition of the Partial Motion to Dismiss, namely, Plaintiff's allegations (1) that he was denied television privileges based on race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment; (2) that Defendants Trometter, Collins, and Kovalchik violated the Eighth Amendment duty to protect; (3) that Defendant Trometter retaliated by spreading rumors that Plaintiff was a rat and a snitch; and (4) of an Eighth Amendment violation via the denial of basic human needs.  See (Docs. 16, 17).  Consequently, the Court finds these claims waived because they have not been restated in the Second Amended Complaint.  Plaintiff's Second Amended Complaint supersedes his Amended Complaint as a matter of law and all claims alleged in the Amended Complaint which are not alleged in the Second Amended Complaint are waived.  See Gibbs v. Wetzel, 2012 U.S. Dist. LEXIS 163149, *6 (M.D. Pa. 2012) ("In particular, Mr. Gibbs is advised that any amended complaint he may file supersedes the original complaint and must be 'retyped or reprinted so that it will be complete in itself including exhibits.' M.D. Pa. LR 15.1. Consequently, all causes of action alleged in the original complaint which are not

alleged in an amended complaint are waived."), citing Young v. Keohane, 809

F.Supp. 1185, 1198 (M.D. Pa. 1992). See also Snyder v. Pascack Valley Hosp.,

303 F.3d 271, 276 (3d Cir. 2002) ("An amended complaint supersedes the original

version in providing the blueprint for the future course of a lawsuit.").

Presently pending is a motion for judgment on the pleadings filed on behalf

of Defendants Trometter and Luquis, (Doc. 32), and a motion for summary

judgment filed on behalf of Defendant Damiter, (Doc. 34).  The motions are fully

briefed and are ripe for disposition.  For the reasons that follow, the motion for

judgment on the pleadings and motion for summary judgment will be granted.

## II.   **Standards of Review**

### A.   **Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[T]his

standard provides that the mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in

original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. <u>Anderson</u>, 477 U.S. at 248; <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 257; <u>Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America</u>, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. <u>Moore v. Tartler</u>, 986 F.2d 682 (3d Cir. 1993); <u>Clement v. Consolidated Rail Corporation</u>, 963 F.2d 599, 600 (3d Cir. 1992); <u>White v. Westinghouse Electric Company</u>, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. FED. R. CIV. P. 56(c)(1); <u>see</u> <u>Celotex</u>, 477 U.S. at 324 (requiring evidentiary

5

support for factual assertions made in response to summary judgment).  The party

opposing the motion "must do more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith

Radio, 475 U.S. 574, 586 (1986).  Parties must produce evidence to show the

existence of every element essential to its case that they bear the burden of proving

at trial, for "a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." Celotex,

477 U .S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

Failure to properly support or contest an assertion of fact may result in the fact

being considered undisputed for the purpose of the motion, although a court may

also give parties an opportunity to properly provide support or opposition.

Fed.R.Civ.P. 56(e).

### B.   Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides that: "After the

pleadings are closed-but early enough not to delay trial-a party may move for

judgment on the pleadings." FED. R. CIV. P. 12(c).  When considering a motion

for judgment on the pleadings, "the motion should not be granted 'unless the

moving party has established that there is no material issue of fact to resolve, and

that it is entitled to judgment in its favor as a matter of law.'" Mele v. Fed.

6

Reserve Bank of New York, 359 F.3d 251, 253 (3d Cir. 2004); see also DiCarlo v. St. Mary Hosp., 530 F.3d 255, 259 (3d Cir. 2008) (Under Rule 12(c) judgment will only be granted where the moving party clearly establishes there are no material issues of fact, and that he or she is entitled to judgment as a matter of law.).  Therefore, when considering a motion for judgment on the pleadings, the court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005).

On January 31, 2013, at the Court's direction, Plaintiff filed a second amended complaint,[3] (Doc. 20), and on February 4, 2013, Defendants filed an answer to the second amended complaint. (Doc. 21).  On January 13, 2014, a scheduling Order was issued, directing that discovery be completed within sixty (60) days of the date of the Order and dispositive motions, if any, be filed within thirty (30) days of the close of discovery.  (Doc. 27).  The pleadings are now closed.  Thus, Defendants' motion for judgment on the pleadings was appropriately filed.

The standard of review for a motion for judgment on the pleadings is

---

[3]The Second Amended Complaint is the one and only complaint; it is the embodiment of each and every claim of the plaintiff.  Any prior pleading was deemed withdrawn when the Second Amended Complaint was filed.

7

identical to that of the motion to dismiss under Federal Rule 12(b)(6).  <u>Turbe v. Gov't of Virgin Islands</u>, 938 F.2d 427, 428 (3d Cir. 1991) (citations omitted); <u>Cannon v. United States</u>, 322 F. Supp. 2d 636, 636 (W.D. Pa. 2004); <u>Katzenmoyer v. City of Reading</u>, 158 F. Supp. 2d 491, 496 (E.D. Pa. 2001).  The only notable difference between these two standards is that the court in a motion on the pleadings reviews not only the complaint but also the answer and any written instruments and exhibits attached to the pleadings. 2 Moore's Fed. Practice Civil § 12.38 (2004); <u>Prima v. Darden Restaurants, Inc.</u>, 78 F.Supp.2d 337, 341–42 (D.N.J. 2000).  Despite this difference, courts in this circuit have consistently stated that the distinction between the two standards is "merely semantic."  <u>Christy v. We The People Forms & Serv. Ctrs.</u>, 213 F.R.D. 235, 238 (D.N.J. 2003); <u>see also</u> <u>Smith v. City of Philadelphia</u>, 345 F.Supp.2d 482, 485 (E.D. Pa. 2004) ("A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is treated using the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."), <u>citing</u> <u>Regalbuto v. City of Philadelphia</u>, 937 F. Supp. 374, 376–77 (E.D. Pa. 1995).

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the

8

complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, the court must "conduct a two-part analysis." Fowler, 578 F.3d at 210. First, the court separates the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11.

9

Second, it "determine[s] whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief'". Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted in forma pauperis status to pursue this suit. The court's obligation to dismiss a complaint under screening provisions of the Prison Litigation Reform Act ("PLRA") for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., 2007 WL 1811198, *4 (W.D. Pa. 2007), aff'd, 264 Fed Appx. 183 (3d Cir. 2008).

## III. Allegations in Plaintiff's Second Amended Complaint.

Plaintiff alleges that on March 28, 2010, he filed a grievance on Defendant Trometter for "her conduct towards [Plaintiff] about turning the television to a program the majority wanted to watch." (Doc. 20 at 2). Plaintiff believes that "once she was aware of the grievance, she proceeded to refer to [Plaintiff] as a

10

'rat' and telling people [Plaintiff] think[s] she is racist." Id. Subsequent to the filing of the grievance, Sergeant Wickersham "confronted [Plaintiff] about a resolution to the grievance filed," and "after consideration [Plaintiff] signed off." Id.

On May 8, 2010, Plaintiff was confined to the Restrictive Housing Unit ("RHU") after an assault by two inmates. Id. He claims that after his release from the RHU on July 1, 2010, he "was sent back to the same block and the same cell", where "she again began to try to entice [him] to respond belligerently." Id.

On August 8, 2010, Plaintiff reported to the officers' station in response to a call from Defendant Trometter that he had legal mail to be retrieved. Id. Upon arrival, Plaintiff states that Defendant Trometter "suggested" he get a pen, which Plaintiff "perceived as another attempt to entice [him] being that officers always carry pens and she could of easily let [him] use hers to sign for [his] legal mail." Id. He claims that he "complied." Id. He states, "however, on [his] way back to the officers station, [he] observed her pass another inmate a pen from out of her top pocket and laughed after noticing that [Plaintiff] witnessed this." Id.

On August 25, 2010, Plaintiff claims that his cellmate, Eric Williams, "conveyed to [him] that she told him 'If you don't him out of there, I will'." Id.

On August 27, 2010, after evening mainline, Plaintiff was "entering A wing

11

where Defendant Trometter, along with 2 other officers one by the name of Eidem (who was sitting behind the desk) was on the wing to secure mainline movements as practiced during all line movements." Id.  Plaintiff states that he was "conversing with another inmate about [his] expiration date which expires on October 29, 2010", and this inmates "just so happened to also be departing on the expiration of his sentence on October 1, 2010." Id.  As the other inmate was entering the wing, Plaintiff "stated to him 'I can't wait until you leave cause I'll have about 4 weeks left and everyone can kiss my ass.'" Id.  Plaintiff states that "those words were in earshot of Defendant Trometter." Id.  He claims that "about a half hour later [he] was escorted to the R.H.U. pending allegations of sexual harassment via drawing which was fabricated in order to punish for the grievance filed against her to satisfy her personal gripe." (Doc. 20 at 4).

On August 28, 2010, Plaintiff wrote the grievance coordinator on a DC 135A inmate request form informing him of the incident, how it is a retaliatory tactic for a grievance previously filed, and he informed Plaintiff to submit an appeal. Id.  Plaintiff states that the same day, he "wrote a grievance regarding this incident and for a full investigation to be conducted before a hearing" and "received no response and was told later that the grievance wasn't ever received." Id.

On August 31, 2010, Plaintiff attended his misconduct hearing regarding the "sexual harassment via drawing." Id. Plaintiff states that Defendant Hearing Examiner Luquis "proceeded to read charges and asked how [Plaintiff] plea[ds]" and "then quietly read to herself [Plaintiff's] inmate version which requested a thorough investigation to unveil the credibility of Defendant Trometter's allegations." Id. Plaintiff claims, however, that the investigation entailed an interview of Sergeant Wichersham, Captain Dusel, and a review of the grievance history and a comparison of his handwriting with the drawing. Id. When asked why his witnesses were not called, Plaintiff alleges that Defendant Luquis "stated [you] don't need any witnesses" and that "[you] know how this works." Id. Plaintiff "stated that I have a right to call witnesses on my behalf" and "she then claimed [you] have no rights." Id.

On September 17, 2010, the Program Review Committee affirmed the hearing examiner's finding of misconduct, "stating the procedures employed were in accordance with laws, department directives and regulations and that the findings were sufficient to support the Hearing Examiner's decision." Id. Plaintiff appealed to final review by the Office of the Chief Hearing Examiner, where on October 18, 2010, his final appeal was denied, on the basis that "the examiners findings are supported by ample evidence." Id.

13

In his second amended complaint, Plaintiff claims that Defendant Trometter "violated state law of misrepresentation of code and ethics manual and with respect to not submitting 'false or improper information or misrepresent the facts in any Department record or report.'" (Doc. 20). Plaintiff believes that Defendant Trometter's actions "created an atypical and significant hardship and violated [Plaintiff's] First, Fourth, and Eighth amendment rights." Id. Specifically, Plaintiff alleges that Defendant Trometter "fabricated a misconduct report in retaliation for a grievance [he] previously filed", which resulted in his placement in the RHU, where he was "subjected to unwarranted cavity searches coming and going from the R.H.U. yard and going to and from the law library." Id. Plaintiff contends that "Officer Trometter was often seen on the unit while other officers was [sic] sent to [Plaintiff's] cell only to conduct a cell search at least every day for the remainder of the time [Plaintiff] spent in the R.H.U. before [he] was released." Id. He states that "during every search [he] was ordered to strip" and that searches were "conducted in very cold weather which resulted in [him] getting sick." Id. Additionally, such actions caused Plaintiff "a great deal of mental anguish and emotional distress and [he] suffered a great deal of depression and paranoia." Id.

Plaintiff alleges that Defendant Luquis violated his Fourteenth Amendment

14

right to due process when she failed to allow Plaintiff witnesses during his misconduct hearing; failed to enter the grievance Plaintiff wrote against Defendant Trometter into evidence; and allowed a handwriting analysis of said drawing, which Plaintiff believes "wasn't conducted and a proper investigation wasn't conducted in accordance with D.O.C. policy." Id.

With respect to Defendant Damiter, Plaintiff claims that Damiter violated state law as to disciplinary enforcement on employees when Plaintiff "filed grievances in regard to an atypical and significant hardship and hardship and it went unresponsive because [Damiter] felt [Plaintiff] was getting to close to being discharged" and when Plaintiff "filed appeals alleging the malfeasance and conduct of the departments employee and no investigation was held to confirm these allegations because [Damiter] felt [Plaintiff] was getting to close to being discharged." Id.

For relief, Plaintiff seeks declaratory and injunctive relief, as well as damages for "emotional and psychological stress." Id.

## IV.   Discussion

### A.   Defendants Collins, Kephart, Defler, and Kovalchik

To establish individual liability under section 1983, "[a] defendant must have personal involvement in the alleged wrongs; liability cannot be predicated

solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d

1195, 1207 (3d Cir. 1988); see also Rizzo v. Goode, 423 U.S. 362 (1976).

"Personal involvement can be shown through allegations of personal direction or

of actual knowledge and acquiescence." Rode, 845 F.2d at 1207–08.  Individual

liability can be imposed under section 1983 only if the state actor played an

"affirmative part" in the alleged misconduct.  Id.  Courts have also held that an

allegation seeking to impose liability on a defendant based on supervisory status,

without more, will not subject the official to section 1983 liability.  Id. at 1208.

A review of Plaintiff's second amended complaint reveals no facts alleging

personal involvement on the part of Defendants Collins, Kephart, Defler, and

Kovalchik.  Aside from listing them in the caption of the second amended

complaint, Plaintiff fails to specifically allege any personal involvement by these

Defendants in any alleged constitutional deprivation.

The Third Circuit Court of Appeals has held that a plaintiff who filed an in

forma pauperis request and whose complaint fails to state a cognizable claim is

entitled to amend his pleading unless the Court finds bad faith, undue delay,

prejudice, or futility. See Grayson v. Mayview State Hospital, 293 F.3d 103, 111

(3d Cir. 2002); Alston v. Parker, 363 F.3d 229, 235–236 (3d Cir. 2004).  See also

Forman v. Davis, 371 U.S. 178, 182 (1982); Shane v. Fauver, 213 F.3d 113, 115

(3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted).

Since Plaintiff has already been afforded two opportunities to amend his complaint, as well as specific directions how to do so, the second amended complaint will be dismissed with prejudice based on futility of any further amended pleading.  Moreover, Plaintiff's action against Defendants has now been pending since April 27, 2011, and he has still failed to file a proper pleading against them.  Thus, it is determined that it would be inequitable to require Defendants to wait any longer for Plaintiff to file a proper pleading against them and the second amended complaint will be dismissed with prejudice based on undue prejudice as to Defendants Collins, Kephart, Defler and Kovalchik.[4]

## B.   **Defendants Trometter and Luquis**

Initially, the Court notes that Plaintiff's defamation allegations that once Defendant Trometter became aware of the grievance he filed against her, she referred to him as a "rat," told people that Plaintiff is a "racist," and commented to his cell mate that "If you don't get him out of there, I will," have previously been addressed and dismissed with prejudice.  See (Doc. 16 at 8-9).  Likewise,

---

[4]Although these Defendants have not joined in either pending dispositive motion before the Court today, it is determined that these Defendants are entitled to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

17

Plaintiff's allegation that Defendant Trometter "fabricated a misconduct report in retaliation for a grievance [Plaintiff] previously filed," was dismissed with prejudice. Id. at 15.  Finally, Plaintiff's claim that Defendant Luquis violated Plaintiff's right to Due Process by failing to allow him to present witnesses, not entering the grievance against Defendant Trometter into evidence, and failing to conduct a handwriting analysis, and the Due Process claim regarding his misconduct hearing were previously dismissed with prejudice. See (Doc. 16 at 23-24).  The remaining claims with respect to Defendants Trometter and Luquis will be addressed.

Plaintiff's Eighth Amendment claim regarding strip searches was dismissed without prejudice by this Court's November 27, 2012 Memorandum and Order. See (Doc. 16 at 32-33).  It was determined that "[t]he amended complaint does not allege that Defendants conducted the searches in an abusive fashion or with excessive force," and that Plaintiff failed to state an Eighth Amendment claim for relief. Id.  However, Plaintiff was given an opportunity to amend this claim, and was "reminded that if he intends to seek relief from Wickersham and Shaeffer pursuant to the Eighth Amendment in a second amended complaint, he must comply with Rule 10 of the Federal Rules of Civil Procedure" and "[i]f Plaintiff wishes to hold any other Defendant liable for his/her conduct regarding the strip

searches, he must plead additional acts establishing that Defendant's personal involvement." Id.

In his second amended complaint, Plaintiff alleges that he was "subjected to unwarranted cavity searches coming and going from the R.H.U. Yard and going to and from the law library", that the searches were conducted "in very cold weather which resulted in [Plaintiff] getting sick" and that "Officer Trometter was often seen on the unit while other officers was [sic] sent to [his] cell only to conduct a cell search at least everyday for the remainder of the time [he] spent in the R.H.U. before [he] was released" and "during every search [he] was ordered to strip." (Doc. 20 at 5).

Although given the opportunity to amend his Eighth Amendment claim with more specificity, Plaintiff failed to do so. The allegations in his second amended complaint mirror those set forth in his First Amended Complaint. With respect to those allegations, in the November 27, 2012 Memorandum, it was concluded:

> The amended complaint does not allege that Defendants conducted the searches in an abusive fashion or with excessive force. See Payton, 798 F. Supp. at 261–62 (dismissing the prisoner's Eighth Amendment challenge to the strip search because he did not allege that the search was conducted with unnecessary force, and embarrassment does not offend the Constitution). Other than the pat down search and being escorted by the arm to a concrete slab in the yard for the metal detector search, Plaintiff does not allege that he was physically touched. Although Plaintiff asserts that he became ill due to the manner in which the search was administered, he fails to

> plead sufficient facts to establish that Defendants were subjectively aware of the risk to his health and then disregarded a risk of serious harm. See Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000), citing Farmer, 511 U.S. at 837 (holding that "a prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety). Consequently, Plaintiff has failed to state an Eighth Amendment claim for relief.

(Doc. 16 at 32). For these same reasons, Plaintiff's Eighth Amendment challenge to the strip searches he endured will be dismissed.

Moreover, Plaintiff's allegation that Defendant Trometter was on the unit when these searches were conducted does not impute Section 1983 liability, as each named Defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which the claims are based. Rode, 845 F.2d at 1207. There are no allegations that Defendant Trometter ordered the searches, was physically present at the cell as searches were being conducted, or was personally involved, or acquiesced in the searches. As such, Plaintiff has failed to allege sufficient facts to implicate Defendant Trometter in any violative conduct.

Next, to the extent Plaintiff next claims that "the R.H.U. is a concrete slab with no exercise equipment as available in general population" and "this was an adverse action", it is determined that such argument without merit, as Plaintiff has failed to demonstrate sufficiently adverse action against him in violation of his

20

constitutional rights.  See Burgos v. Canino, 358 Fed. Appx. 302, 307 (3d Cir.

2009) (holding that urinalysis, harassment, threats, temporary inconveniences, and

denial of recreation did not rise to level of adverse action against prisoner);

Walker v. Bowersox, 526 F.3d 1186, 1190 (8th Cir. 2008) (stating, "the two

incidents when Knarr directed others to give Walker an alternative meal, although

purportedly retaliatory, were not sufficiently severe to amount to a constitutional

violation"); Gill v. Tuttle, 93 Fed. Appx. 301, 303–04 (2d Cir. 2004) (explaining

that to establish a retaliation claim, an inmate must allege adverse action that

imposes a substantial impact on inmate); Jones v. Greninger, 188 F.3d 322,

325–26 (5th Cir. 1999) (finding that although retaliatory intent was properly

alleged, the claim that the inmate was restricted to five hours per week in law

library in retaliation for filing grievances failed because the alleged adverse acts

did not rise to level of constitutional claim); Thaddeus–X v. Blatter, 175 F.3d 378,

398 (6th Cir. 1999) ("Prisoners may be required to tolerate more than public

employees, who may be required to tolerate more than average citizens, before an

action taken against them is considered adverse").

    Plaintiff contends that Defendant Trometter's actions violated the

Department's Code of Ethics.  This claim must be dismissed because he cannot

bring a Section 1983 action to vindicate a purported violation of Department

Policy.  See Luckett v. Blaine, 850 A.2d 811, 820 (Pa. Cmwlth. 2004).[5]  See also

Sandin v. Conner, 515 U.S. 472 (1995).

To the extent Plaintiff alleges that Defendant Trometter is liable for "state

law of misrepresentation," (Doc. 20), there is no Section 1983 cause of action for

misrepresentation.  Under certain circumstances, this Court may exercise pendent

jurisdiction over state-based claims.  United Mine Workers v. Gibbs, 383 U.S. 715

(1966).  However, because no federal common law exists on any state-based tort

claims, Erie R.R. v. Tompkins, 304 U.S. 64 (1938), this Court is required to apply

state law (Pennsylvania) when confronted with "pendent" state-based claims.

Under Pennsylvania's sovereign immunity statute, "the Commonwealth, and

---

[5]The Third Circuit Court of Appeals reasoned:
Luckett's additional challenges to the manner in which the disciplinary
proceeding was conducted do not rise to the level of a constitutional
claim. 'The Constitution does not require strict adherence to
administrative regulations and guidelines.' Flanagan v. Shively, 783 F.
Supp. 922, 931 (M.D. Pa. 1992). The Constitution only requires
compliance with minimal federal due process standards protected by the
Due Process Clause of the Fourteenth Amendment. Id. The trial court
correctly recognized that Luckett failed to identify a liberty interest
worthy of due process protections. His insistence that he has a
constitutional right to strict adherence, without any deviation in time or
manner, by prison officials to the language of the Department of
Corrections Administrative Regulation 801 (DC-ADM 801) is not
supported by case law precedent. Mandatory language in a state
regulation or directive is no longer the sole criterion for finding the
creation of a liberty interest. Sandin v. Conner, 515 U.S. 472, 483
(1995).
Luckett, 850 A.2d at 820.

its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S.A. § 2310.  At 42 Pa. C.S.A. § 8522, the General Assembly specifically waived sovereign immunity in nine areas, including cases involving medical professional liability.[6] However, it is well-settled that immunity is waived only for claims asserted against health care employees, and not to individuals who are not medical professionals.  McCool v. Dep't of Corr., 984 A.2d 565, 570 (Pa. Cmwlth. 2009) (interpreting 42 Pa. C.S.A. § 8522(b)(2)).  Moreover, sovereign immunity applies even to intentional torts committed by Commonwealth defendants acting in their individual capacity.  Story v. Mechling, 412 F. Supp. 2d 509, 518 (W.D. Pa.

---

[6]The nine exceptions to sovereign immunity pursuant to 42 Pa. C.S.A. § 8522(b) are:

> (1) operation of any motor vehicle in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) care, custody, or control of personal property in the possession or control of Commonwealth parties; (4) dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous condition of highways under the jurisdiction of Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements; (6) care, custody, or control of animals in the possession or control of a Commonwealth party; (7) sale of liquor at Pennsylvania liquor stores; (8) acts of a member of the Pennsylvania military forces; and (9) administration, manufacture and use of toxoid or vaccine.

2006), aff'd, 214 F. App'x 161 (3rd Cir. 2007); Maute v. Frank, 657 A.2d 985, 986 (Pa. Super. Ct. 1995).  Willful misconduct does not vitiate a Commonwealth employee's immunity if the employee is acting within the scope of his employment, including intentional acts which cause emotional distress.  Mitchell v. Luckenbill, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010).  Because Plaintiff's alleged intentional tort of "state law of misrepresentation of code and ethics," does not fall within one of the enumerated exceptions to statutory sovereign immunity under Pennsylvania law, it is barred.

Further, to the extent that Plaintiff seeks money damages for pain and suffering from Defendants, he is precluded under 42 U.S.C. § 1997e(e) since he does not allege in his second amended complaint any physical harm Defendants caused him.  See Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir. 2003); Allah v. Al-Hafeez, 226 F. 3d 247, 251 (3d Cir. 2000); Kantamanto v. King, 651 F. Supp. 2d 313, 320 n.1 (E.D. Pa. 2009) (finding that an inmate cannot obtain compensatory damages for pain and suffering in civil rights action where he did not allege any physical injury).  Section 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  Accordingly, Plaintiff's claim

24

for money damages in his second amended complaint for pain and suffering against Defendants will be dismissed with prejudice.  Based on well-settled law, the Court finds that it would be futile to allow Plaintiff another opportunity to amend with respect to his damages claim for pain and suffering.  See Allah, 226 F. 3d 247.

Finally, Plaintiff's request for injunctive relief is moot because he is no longer confined at SCI-Frackville, nor is there any likelihood of his return.  See Johnson v. Wenerowicz, 440 Fed. Appx. 60, 62 (3d Cir. 2011) (holding that the prisoner's "requests for injunctive and declaratory relief against the named DOC defendants were rendered moot by his transfer" to another prison); Fortes v. Harding, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998) (Vanaskie, J.) (concluding that a prisoner's "transfer to another institution moots any claims for injunctive or declaratory relief").  Thus, Plaintiff's requests for injunctive relief will be dismissed as moot.

### C.   Defendant Damiter

Plaintiff's only allegation against Defendant Damiter is that Plaintiff filed grievances and Defendant Damiter did not process them "because [he] felt [Plaintiff] was getting to close to being discharged."  (Doc. 20 at 6).

Attached as an exhibit in support of his motion for summary judgment,

25

Defendant Damiter submits a print out of all the grievances Miller filed while incarcerated at SCI-Frackville, as well as a copy of each grievance and its appeals. (Doc. 35-3 at 1-17). Plaintiff filed five (5) grievances during his period of incarceration at SCI-Frackville. Id. There are only two grievances filed in 2010; one on April 5, 2010, Grievance No. 313313, regarding problems Plaintiff was having with staff; and one on June 4, 2010, Grievance No. 320698, regarding Plaintiff's misconduct appeal. Id. There are no grievances listed for the months of July or August, 2010. To the extent that Plaintiff claims that he filed a grievance on or about August 28, 2010 regarding the retaliatory misconduct he received on August 27, 2010, there is no evidence in the record that this grievance ever existed or was filed. Plaintiff does not counter this documentary evidence with any evidence of his own.

In his brief in opposition to Defendant Damiter's motion for summary judgment, Plaintiff refers solely to Grievance No. 313313, a grievance he states that he "alleged in his complaint and that defendants alleged never 'existed'." (Doc. 40 at 4). Plaintiff's argument lacks merit. Submitted as an exhibit in support of Defendant Damiter's motion for summary judgment is Grievance No. 313313, as well as Plaintiff's signed withdrawal of Grievance No. 313313. See (Doc. 35-5 at 14-15). Plaintiff's offers nothing to refute the existence and

26

withdrawal of Grievance No. 313313.  The record before the Court demonstrates that all grievances filed by Plaintiff were processed accordingly, regardless of how close Plaintiff was to being discharged from SCI-Frackville.  Thus, Defendant Damiter is entitled to summary judgment.

To the extent Plaintiff alleges that Defendant Damiter "violated state law as to disciplinary enforcement of employees", (Doc. 20 at 6), there is no Section 1983 cause of action for this purported violation.  Under certain circumstances, this Court may exercise pendent jurisdiction over state-based claims.  United Mine Workers v. Gibbs, 383 U.S. 715 (1966).  However, because no federal common law exists on any state-based tort claims, Erie R.R. v. Tompkins, 304 U.S. 64 (1938), this Court is required to apply state law (Pennsylvania) when confronted with "pendent" state-based claims.  Once again, however, because Plaintiff's alleged intentional tort of "disciplinary enforcement on employees," does not fall within one of the enumerated exceptions to statutory sovereign immunity under Pennsylvania law, it is barred.

A separate Order will be issued.


Dated: October 9, 2014

United States District Judge